**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

LINDA COOP                                                                                    PLAINTIFF

v.                                        **Case No.: 3:19-cv-254-LPR**

LAWRENCE OPERATIONS, LLC                                                       DEFENDANT

<u>**ORDER**</u>

  This is a trip and fall case.  Ms. Coop fell in the parking lot of Walnut Ridge Nursing and

Rehabilitation Center in November of 2016.  She and her husband were going there to visit her

brother.  The parking lot was made of concrete slabs.  It had numerous cracks and patches.  Ms.

Coop fell where a portion of a concrete slab had settled, resulting in a small drop-off from the

adjacent concrete slab.  A picture is worth a thousand words.  The location of the fall is

memorialized in Exhibits 1, 2, and 3 to Ms. Coop's deposition.[1]

  Ms. Coop brought the instant negligence action against Defendant Lawrence Operations,

LLC because she believed that (1) it was the entity that owned and operated Walnut Ridge at the

time of her fall, and (2) its negligence was the cause of her fall.[2]  Primarily, Ms. Coop alleged that

Lawrence Operations, LLC failed to maintain the parking lot in a reasonable and safe condition

and failed to warn visitors of the danger and potential harm posed by the condition of the parking

lot.[3]

  Pending before the Court are two motions.  The first is Ms. Coop's Motion for Leave to

File an Amended Complaint ("Motion to Amend").[4]  The proposed amendment only has one

---

[1] Exs. 1, 2, 3 to Ex. A to Statement of Facts (Doc. 16-1) at 18–20.

[2] Pl.'s Compl. (Doc. 2) ¶¶ 2, 9.

[3] *Id.* ¶ 9.

[4] Pl.'s Mot. to Amend (Doc. 12).

purpose: to add Lawrence-Progressive Eldercare Services, Inc. as a second defendant in this case.[5] The impetus for the addition appears to have been Defendant Lawrence Operations, LLC's recent disclosure that it transferred ownership and operation of the nursing home to Lawrence-Progressive Eldercare Services, Inc. in September of 2015.[6]  The proposed amendment does not drop Lawrence Operations, LLC as a Defendant because Plaintiff feels that she cannot trust Lawrence Operations, LLC's representations as to which entity was the true owner and operator of Walnut Ridge on the day Ms. Coop fell.[7]

The second motion is Lawrence Operations, LLC's Motion for Summary Judgment.[8]  In addition to arguing that it did not own or operate Walnut Ridge on the day Ms. Coop fell, Lawrence Operations, LLC argues that the condition of the parking lot where Ms. Coop fell—specifically, the settled slab and resulting small drop-off—was open and obvious.[9]  According to Lawrence Operations, LLC, this precludes a finding that it acted negligently toward Ms. Coop.

### Summary Judgment Facts

On November 26, 2016, Ms. Coop and her husband went to Walnut Ridge, a nursing home operated by Lawrence-Progressive Eldercare Services, Inc.[10]  The Coops intended to visit Ms. Coop's brother, who had been a resident of Walnut Ridge for seven or eight years, to deliver Christmas decorations.[11]  Ms. Coop had previously visited her brother at Walnut Ridge many times.[12]

---

[5]   *Compare* Pl.'s Compl. (Doc. 2), *with* Ex. E to Pl.'s Mot. to Amend (Doc. 12-5).

[6]   Pl.'s Mot. to Amend (Doc. 12) ¶ 6.

[7]   August 20, 2021 Hr'g Tr. at 18; *see also supra* note 5.

[8]   Def.'s Mot. for Summ. J. (Doc. 14).

[9]   *Id.* ¶¶ 6, 7.

[10]   Statement of Facts (Doc. 16) ¶ 1, 21.

[11]   Ex. A (Coop Depo.) to Statement of Facts (Doc. 16-1) at 5:16–23, 7:9–14.

[12]   *Id.* at 5:24–6:2.

The Coops parked in a Walnut Ridge parking lot that sits between a main road and an entrance to the facility.[13]  The main road is south of the parking lot.[14]  The facility entrance is north of the parking lot.[15]  The parking lot has two rows, one close to the facility on the north side and the other close to the main road on the south side.[16]  The parking lot surface is made of concrete slabs.[17]  Some of the slabs have settled, resulting in a fair number of cracks, crevices, and height differentials between or within the slabs.[18]

Mr. Coop drove that day.[19]  The Coops arrived just after lunchtime.[20]  The weather was clear.[21]  After Mr. Coop parked in a spot on the south side of the parking lot (near the main road), he and Ms. Coop got out of the car.[22]  Mr. Coop then walked across the parking lot towards the facility entrance while Ms. Coop gathered some things out of the car.[23]  Mr. Coop eventually stopped near the front door at the facility entrance and waited on Ms. Coop to finish at the car so he could remotely lock the car.[24]

Ms. Coop, while looking at Mr. Coop, started walking towards the entrance.[25]  Ms. Coop took the straightest line to reach the entrance.[26]  While walking, Ms. Coop fell in the parking lot.[27]

---

[13]  Statement of Facts (Doc. 16) ¶ 2.

[14]  *Id.* ¶ 2.

[15]  *Id.*

[16]  *Id.* ¶ 3.

[17]  Ex. 1 to Ex. A (Coop Depo.) to Statement of Facts (Doc. 16-1) at 18.

[18]  *Id.*; *see also* Exs. 1–3, 5–8, to Ex. A to Statement of Facts (Doc. 16-1) at 18–20, 22–25.

[19]  Ex. A (Coop Depo.) to Statement of Facts (Doc. 16-1) at 7:1.

[20]  *Id.* at 13:12–13.

[21]  *Id.* at 13:25–14:1.

[22]  Statement of Facts (Doc. 16) ¶ 7; *Id.* at 7:1, 12:20–25.

[23]  Ex. A (Coop Depo.) to Statement of Facts (Doc. 16-1) at 8:22–9:4.

[24]  *Id.* at 10:8–10, 12:20–25.

[25]  *Id.* at 12:24–25.

[26]  *Id.* at 25:4–11.

[27]  *Id.* at 13:1–3.

Ms. Coop testified that "it felt like I stepped in a hole" and that "it felt like . . . someone grabbed my ankles and just twisted them and threw me down . . . ."[28]  The location of the fall can be readily seen in Exhibits 1, 2, and 3 to Ms. Coop's deposition.[29]  It is marked by an "x" in Exhibits 1 and 3.[30]  It is obvious that Ms. Coop did not step in a hole.  Instead, Ms. Coop fell in an area where a large concrete slab had settled.[31]  The settling resulted in a small height differential between two slabs.

Photographic evidence indicates that some parts of the parking lot were not in prime condition.[32]  The concrete slab on which Ms. Coop fell shows significant settling over a distance of the parking lot greater than one parking spot.[33]  Ms. Coop testified that the parking lot had multiple areas where concrete slabs had settled.[34]  Ms. Coop testified that, before the day in question, she knew the parking lot had multiple patches addressing surface issues.[35]  Ms. Coop said that "if you're looking at [the parking lot]," the condition of the parking lot "would be apparent."[36]  As to the slab where Ms. Coop fell, she testified that "if you look at it from one direction, it's apparent.  If you're not looking for it, which of course I wasn't, and you're just walking, it probably wouldn't be apparent unless you're just watching for something like that."[37]

---

[28] *Id.*

[29] Exs. 1, 2, 3 to Ex. A to Statement of Facts (Doc. 16-1) at 18–20.

[30] Ex. A (Coop Depo.) to Statement of Facts (Doc. 16-1) at 20:13–16 (acknowledging that an "x" on the photographs comprising Exhibit 1 to her deposition denotes the place where she fell; Exs. 1, 3 to Ex. A to Statement of Facts (Doc. 16-1) at 18, 20.

[31] Ex. 1 to Ex. A to Statement of Facts (Doc. 16-1) at 18.

[32] Exs. 1–3, 5–8 to Ex. A to Statement of Facts (Doc. 16-1) at 18–20, 22–25.

[33] Ex. 1 to Ex. A (Coop Depo.) to Statement of Facts (Doc. 16-1) at 18.

[34] Ex. A (Coop Depo.) to Statement of Facts (Doc. 16-1) 21:7–12.

[35] *Id.* at 21:4–23.

[36] *Id.* at 21:24–22:5.

[37] *Id.*

In addition, Ms. Coop testified that nothing prevented her from walking around the concrete slab where she fell (or the other settled slabs) in order to access the facility entrance.[38]

**Procedural History Relevant to the Motion to Amend**

Confusion over who owned and operated Walnut Ridge at the time Ms. Coop fell takes center stage in Ms. Coop's Motion to Amend. Spoiler alert. It turns out that Lawrence-Progressive Eldercare Services, Inc. (not Defendant Lawrence Operations, LLC) owned and operated Walnut Ridge on the day in question. That's why Ms. Coop now seeks to add Lawrence-Progressive Eldercare Services, Inc. as a Defendant. The Court's analysis of the propriety of Ms. Coop's Motion to Amend turns in large part on the parties' actions during the course of litigation. Thus, a recitation of relevant procedural facts is necessary.

On July 29, 2019, Ms. Coop sued Lawrence Operations, LLC d/b/a Walnut Ridge Nursing and Rehabilitation Center in the Circuit Court of Lawrence County, Arkansas.[39] Before Ms. Coop filed the Complaint, she saw on the Arkansas Secretary of State's website that Lawrence Operations, LLC was associated with the fictitious name Walnut Ridge Nursing and Rehabilitation Center.[40] Thinking this meant that Lawrence Operations, LLC owned and operated the nursing home, Ms. Coop sued Lawrence Operations, LLC.[41] Ms. Coop served process on Lawrence Operations, LLC by mailing the Complaint to its registered agent for service of process, Amy Wilbourn.[42] (In an interesting twist, Ms. Wilbourn, an attorney with Conners & Winters, LLP, is

---

[38] *Id.* at 25:8–13, 40:9–13.

[39] Pl.'s Compl. (Doc. 2).

[40] Pl.'s Mot. to Amend Compl. (Doc. 12) ¶ 3.

[41] August 20, 2021 Hr'g Tr. at 4–7.

[42] Notice of Removal (Doc. 1) at 15.

5

also the registered agent for service of process for and the incorporator/organizer of Lawrence-Progressive Eldercare Services, Inc.[43])

Ms. Coop alleged in her Complaint that "Lawrence Operations, LLC d/b/a Walnut Ridge Nursing and Rehabilitation Center was a domestic corporation authorized and do[i]ng business in the State of Arkansas, and doing business as Walnut Ridge Nursing and Rehabilitation Center in Walnut Ridge, Lawrence County, Arkansas."[44]   In its Answer, Lawrence Operations, LLC responded to that allegation as follows: "Defendant admits that Lawrence Operations, LLC d/b/a Walnut Ridge Nursing and Rehabilitation Center is an Arkansas corporation, [and] was authorized to do business in Arkansas.  The remaining allegations are denied as worded."[45]   It is fair to say that it was less than clear what Lawrence Operations, LLC was denying.  On December 19, 2019, Lawrence Operations, LLC made its Rule 26 initial disclosures to Ms. Coop.[46]   These initial disclosures did not include any information suggesting that Lawrence Operations, LLC was not the owner and operator of Walnut Ridge on November 26, 2016.[47]

On September 17, 2019, Lawrence Operations, LLC removed the case to this Court based on diversity jurisdiction.[48]   In its Notice of Removal, Lawrence Operations, LLC pleaded that its

---

[43]   Pl.'s Mot. to Amend Compl. (Doc. 12) ¶ 10; Ex. D to Pl.'s Mot. to Amend Compl. (Doc. 12-4).  Before filing the Complaint, the record shows that Ms. Coop's counsel communicated with another lawyer with Conners & Winters, LLP regarding Ms. Coop's demand for relief from Lawrence Operations, LLC.  Ex. B to Pl.'s Mot. to Amend Compl. (Doc. 12-2).

[44]   Pl.'s Compl. (Doc. 2) ¶ 2.

[45]   Def.'s Answer (Doc. 4) ¶ 3.

[46]   Pl.'s Mot. to Amend (Doc. 12) ¶ 5.

[47]   *See* Pl.'s Mot. to Amend Compl. (Doc. 12) ¶ 7 (indicating that Lawrence Operations, LLC amended its initial disclosures to include documentation from various sources suggesting that Lawrence-Progressive Eldercare Services, Inc. was the owner and operator of Walnut Ridge when Ms. Coop fell); August 20, 2021 Hr'g Tr. at 2 (contending that Lawrence Operations, LLC's "initial disclosures did not indicate any ownership issue"); Def.'s Resp. to Pl.'s Mot. to Amend (Doc. 17) at 3 (stating that Lawrence Operations, LLC amended its initial disclosures upon learning that Lawrence Operations, LLC "no longer held the license to operate the nursing home").

[48]   Notice of Removal (Doc. 1).

sole member is Sub-Ten Holdings, LLC.[49]   Sub-Ten Holdings has three members: Mark Thompson, Ross Ponthie, and JEJ Investments, LLC.[50]   JEJ Investments, LLC's sole member is John Ponthie.[51]   Mr. Thompson and the Ponthies are citizens of Louisiana and Ms. Coop is an Arkansas citizen; thus (according to Lawrence Operations, LLC) diversity of citizenship was met.[52]

On December 12, 2019, the Court entered a Final Scheduling Order setting November 12, 2020 as the deadline for parties to seek leave to amend pleadings or add parties.[53]   The Order established February 12, 2021 as the discovery deadline.[54]   The Court issued an Amended Final Scheduling Order on May 4, 2020.[55]   This Order revised the deadlines for Expert Disclosures and Reports, but it did not change the discovery deadline or the deadline for parties to seek leave to amend pleadings or add parties.[56]

On January 12, 2021 (thirty days before the discovery cutoff and two months past the deadline for parties to seek leave to amend pleadings), Ms. Coop propounded her first set of written discovery on Lawrence Operations, LLC.[57]   On February 12, 2021, Lawrence Operations, LLC served its discovery responses on Ms. Coop.[58]   The same day, Lawrence Operations, LLC

---

[49] *Id.* ¶ 8.

[50] *Id.*

[51] *Id.*

[52] *Id.*  Ms. Coop sought damages exceeding the minimum amount required by federal court diversity jurisdiction. Pl.'s Compl. (Doc. 2) at 4.

[53] Final Scheduling Order (Doc. 9) ¶ 4.

[54] *Id.* ¶ 2.

[55] Am. Final Scheduling Order (Doc. 10) ¶¶ 2–4.

[56] *Id.* ¶¶ 2, 4.  After Plaintiff filed her Motion to Amend, the Court entered a Second Amended Final Scheduling Order and a Third Amended Final Scheduling Order.  2d Am. Final Scheduling Order (Doc. 28); 3d Am. Final Scheduling Order (Doc. 32).  Neither Order changed the motion-to-amend deadline.

[57] Def.'s Resp. to Pl.'s Mot. to Amend (Doc. 17) at 3.  At the motion hearing, Ms. Coop's counsel did not dispute the timing of Ms. Coop's discovery request.  August 20, 2021 Hr'g Tr. at 15.

[58] Def.'s Resp. to Pl.'s First Set of Interrogatories (Doc. 17-1) at 10.

supplemented its initial disclosures.[59]  In its responses to Ms. Coop's written discovery and in its supplemented initial disclosures, Lawrence Operations, LLC revealed for the first time that it was not the owner or occupier of Walnut Ridge on the day Ms. Coop fell.[60]  Lawrence Operations, LLC "submitted documentation from the Arkansas Department of Human Services and other sources alleging that a different entity, Lawrence-Progressive Eldercare Services, Inc. was doing business as Walnut Ridge Nursing and Rehabilitation Center and had been doing so since September 1, 2015, and was the owner or operator of the premises" on the day Ms. Coop fell.[61] Counsel for Lawrence Operations, LLC says it discovered the change in ownership while collecting information to respond to Ms. Coop's first discovery request.[62]

On February 19, 2021, Ms. Coop filed a Motion to Amend.[63]  In the Motion, Ms. Coop seeks leave of the Court to add Lawrence-Progressive Eldercare Services, Inc. as a defendant.[64] Ms. Coop does not seek to drop Lawrence Operations, LLC as a defendant.

## Analysis

For the reasons discussed below, the Court denies Plaintiff's Motion to Amend and grants Defendant's Motion for Summary Judgment.

### I.   Motion to Amend

In the circumstances of this case, the liberal Rule 15 amendment standard does not apply. Because the Motion to Amend was filed after—well after—the deadline for amendments in the

---

[59]  Def.'s Am. Initial Disclosures (Doc. 17-2) at 3.

[60]  Def.'s Resp. to Pl.'s First Set of Interrogatories (Doc. 17-1) at 2, 3; Def.'s Am. Initial Disclosures (Doc. 17-2) at 2.

[61]  Pl.'s Mot. to Amend (Doc. 12) ¶ 6.

[62]  Def.'s Resp. to Pl.'s Mot. to Amend (Doc. 17) at 3.

[63]  Pl.'s Mot. to Amend (Doc. 12).

[64]  Pl.'s Mot. to Amend (Doc. 12); *see also* Ex. B to Pl.'s Mot. to Amend (Doc. 12-5) (adding Lawrence-Progressive Eldercare Services, Inc. in the proposed Amended Complaint).

Court's operative scheduling order, the more onerous "good cause" standard from Rule 16 applies. In *Sherman v. Winco Fireworks, Inc*., the Eighth Circuit explained that "[t]he primary measure of good cause is the movant's diligence in attempting to meet the order's requirements" and that prejudice or lack of prejudice to the nonmovant should be considered only after a movant's diligence has been established.[65]

Even if the good cause standard is met, there's another hurdle for Plaintiff to overcome. Because this is a removal case grounded in diversity jurisdiction, and because the proposed Amendment seeks to join a non-diverse defendant to this case, 28 U.S.C. 1447(e) applies: "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to state court." The Court's discretion here is broad but not unlimited. "Joinder would be required if the plaintiff satisfied [Rule] 19 by showing that the new parties are necessary and indispensable to a full resolution of the case."[66] In the absence of that Rule 19 showing, Eighth Circuit precedent directs this Court to consider (or at least strongly suggests this Court should consider) several factors as it exercises its discretion under 28 U.S.C. 1447(e):

> "The Court is required to consider (1) the extent to which the joinder of the nondiverse party is sought to defeat federal jurisdiction, (2) whether [the] plaintiff has been dilatory in asking for amendment, and (3) whether the plaintiff will be significantly injured if amendment is not allowed."[67]

---

[65]  532 F.3d 709, 715-17 (8th Cir. 2008).

[66]  *Bailey v. Bayer CropScience L.P.*, 563 F.3d 302, 308 (8th Cir. 2009).

[67]  *Id.* at 309 (quoting *In Le Duc v. Bujake*, 777 F.Supp. 10, 11–12 (E.D.Mo.1991) (citing *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir.1987))).

The Eighth Circuit says that the Court should use these factors to "'balance the defendant's interests in maintaining the federal forum with the competing interests of not having parallel lawsuits.'"[68]

The Motion to Amend is denied because Plaintiff has not established the good cause required by Rule 16.  Plaintiff has failed to do so because she has not established diligence in meeting the motion-to-amend deadline set out in the Court's operative scheduling order.  That deadline was November 12, 2020.  Before the expiration of the deadline, Plaintiff never checked publicly available information from the Arkansas Department of Human Services' Office of Long Term Care to determine which company owned and operated the nursing home.  Before the expiration of the amendment deadline, Plaintiff never propounded discovery to Defendant, much less discovery concerning ownership and operation of the nursing home.  Indeed, Plaintiff did not propound any discovery on Defendant until January 12, 2021, two months after the amendment deadline expired.  Plaintiff essentially admitted at the motion hearing that her conduct was not diligent.[69]

Plaintiff makes two arguments to excuse the lack of diligence or, put another way, to suggest she was diligent enough under the circumstances.  First, she generally references the COVID-19 pandemic.[70]  But she fails to specifically explain how or why the existence of the pandemic prevented her from doing anything at all to learn which entity owned and operated the nursing home.  The mere existence of the pandemic, with nothing more specific, does not alter the diligence calculation here.

---

[68]  *Id.* (quoting *Hensgens*, 833 F.2d at 1182).

[69]  August 20, 2021 Hr'g Tr. at 15.

[70]  *Id.*

Second, Plaintiff argues that Defendant—either intentionally or unintentionally—lulled her into inaction on the ownership and operation question.[71]  Before filing suit, Plaintiff consulted the Secretary of State's website and learned that Defendant was associated with the fictitious name "Walnut Ridge Nursing and Rehabilitation Center."[72]  Plaintiff suggests this reasonably led her to conclude that Defendant was the owner and operator of the nursing home.  Plaintiff further suggests that Defendant did nothing to disabuse Plaintiff of this reasonable belief, even though Defendant must have known it transferred ownership and operation of Walnut Ridge Nursing and Rehabilitation Center to a different entity in 2015.  Defendant's Answer did not clearly dispute ownership or operation.[73]  And Defendant's Rule 26 initial disclosures did not suggest such a dispute existed.  Plaintiff specifically notes that Rule 26 required Defendant to initially disclose: (1) "the name . . . of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its . . . defenses[;]" and (2) "a copy . . . of all documents . . . that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses . . . ."[74]  Plaintiff argues that, because Defendant did not disclose a person, document, or subject suggesting any type of ownership and operation defense, Plaintiff was entitled to assume it had correctly identified the owner and operator of the nursing home in its Complaint.

This is a much stronger argument than the Covid argument.  But it still does not carry the day.  Before the suit or at any time thereafter, Plaintiff could have but did not access publicly available information that would have made entirely clear what entity owned and operated the

---

[71]  *See* Pl.'s Mot. to Amend (Doc. 12) ¶¶ 9, 12.

[72]  August 20, 2021 Hr'g Tr. at 5–7.

[73]  *See supra* page 6.

[74]  Pl.'s Mot. to Amend (Doc. 12) ¶¶ 7–8 (quoting FED. R. CIV. P. 26(a)(1)(A)(i)–(ii)).

11

nursing home.  The relevant paragraph in Defendant's Answer was neither a clear denial nor a clear admission as to ownership and operation.[75]  This should have been a red flag for Plaintiff and clued her in to the need for further examination of the ownership and operation issue.  In any event, given the absence of a clear admission by Defendant in its Answer, Plaintiff had the burden to prove that Defendant owned or operated the nursing home.  There was a lot of time prior to the amendment deadline for Plaintiff to bring the issue to a head by way of interrogatories, requests for admission, requests for production, or other discovery methods.  Plaintiff failed to do so. Plaintiff did not serve any discovery requests until long after the amendment deadline.  The omission in Defendant's Rule 26 initial disclosures is bad and perhaps sanctionable; but it does not excuse Plaintiff's lack of diligence.

The Rule 16 good cause standard has not been met.  Even if it had, the Court would deny the amendment as a matter of its discretion under 28 U.S.C. 1447(e).  Plaintiff does not argue that the proposed new Defendant is an indispensable party under Rule 19.  And the *Hensgens* balancing test laid out above justifies denial of the amendment.

The first factor cuts in Plaintiff's favor.  Plaintiff is not seeking amendment to defeat federal jurisdiction.  Indeed, Plaintiff specifically asks the Court to keep jurisdiction, and argues that the Court can do so because jurisdiction existed at the outset of the case.[76]  Given the statutory command of 1447(e), Plaintiff is wrong in her legal analysis.  But she is sincere in her request.

The second factor cuts in favor of Defendant for the reasons discussed above in the Rule 16 analysis.  The diligence analysis for Rule 16 purposes and the dilatory analysis for this second factor of the *Hensgens* analysis largely overlap.

---

[75] *See supra* page 6.

[76] Ex. E to Pl.'s Mot. to Amend (Doc. 12-5) ¶ 6.

The third factor cuts strongly in favor of Defendant. Plaintiff won't be significantly injured by the denial of its Motion. Aside from the technical question of which entity owned and operated the nursing home, there is no substantive fact or legal issue that would change in any way based on the presence or absence of the proposed new defendant. As will be discussed below, the Court is granting summary judgment in favor of the current Defendant because no rational juror could conclude anything other than (1) the settled concrete slab (and the height differential between it and an adjoining slab) in the parking lot was an open and obvious hazard and (2) Ms. Coop was not forced to encounter the hazard. Given this conclusion, Plaintiff would not gain anything by the addition of the proposed new defendant and thus is not injured by the omission of the proposed new defendant. If no rational juror could find for Plaintiff and against the current Defendant, no rational juror could find for Plaintiff and against the proposed new Defendant. Indeed, the only potential injury is having the case decided in federal court as opposed to Arkansas state court. But that is not a significant injury because (1) Plaintiff wants to be in federal court, (2) the Court is applying Arkansas state law anyway, and (3) no state judge could see the merits issues differently than this Court sees them.

In short, the *Hensgens* analysis points in favor of denying the amendment.

## II.   Summary Judgment

A court shall grant summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.[77] The moving party has the burden to show that (1) there is an absence of a genuine dispute of material fact on at least one essential element of the nonmoving party's case and (2) the absence means that a rational juror could not possibly find for the nonmoving party on that essential element of the nonmoving party's

---

[77] *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (citing FED. R. CIV. P. 56).

case.[78]   Conversely, if the nonmoving party can present specific facts by "affidavit, deposition, or otherwise, showing the existence of a genuine issue for trial," then summary judgment is not appropriate.[79]   Importantly, "[t]he mere existence of a factual dispute is insufficient alone to bar summary judgment."[80]   The dispute of fact must be both genuine and material to prevent summary judgment.[81]   A genuine dispute of fact exists where a rational juror could decide the particular question of fact for either party.[82]   A material dispute of fact exists where the juror's decision on the particular question of fact determines the outcome of a potentially dispositive issue under the substantive law.[83]

"The mere fact that a person slips and falls does not give rise to an inference of negligence."[84]   To prevail on a negligence claim in Arkansas, a plaintiff must prove "that the defendant owed a duty to the plaintiff, that the defendant breached the duty, and that the breach was the proximate cause of the plaintiff's injuries."[85]   "The issue of whether a duty exists is always a question of law, not to be decided by a trier of fact."[86]   A property owner's duty depends on the status of the party who was injured on the property.   Neither party disputes that Ms. Coop was a business invitee on Walnut Ridge's property.   Given the nature of Ms. Coop's visit (i.e., visiting a resident of Walnut Ridge), the Court concludes that Ms. Coop was a business invitee.

"In Arkansas, a property owner has a duty to exercise ordinary care to maintain the

---

[78]   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[79]   *Grey v. City of Oak Grove, Mo*., 396 F.3d 1031, 1034 (8th Cir. 2005).

[80]   *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989) (citation omitted).

[81]   *Id.*

[82]   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[83]   *Id.*

[84]   *Wal-Mart Stores, Inc. v. Regions Bank Tr. Dep't*, 347 Ark. 826, 832, 69 S.W.3d 20, 24 (Ark. 2002).

[85]   *Duran v. Sw. Arkansas Elec. Coop. Corp.*, 2018 Ark. 33, at 6, 537 S.W.3d 722, 726.

[86]   *Lacy v. Flake & Kelley Mgmt., Inc.*, 366 Ark. 365, 367, 235 S.W.3d 894, 896 (Ark. 2006).

premises in a reasonably safe condition for the benefit of invitees."[87]   This means that a property

owner must take "reasonable care to guard against any harm that appear[s] 'likely in the ordinary

course of events.'"[88]   Arkansas law imposes "no duty to guard against merely possible, as opposed

to likely or probable, harm."[89]   Further, a property owner's "duty to warn invitees of a dangerous

condition applies only to defects or conditions such as hidden dangers, traps, snares, pitfalls and

the like, in that they are known to the owner but not to the invitee and would not be observed by

the latter in the exercise of ordinary care."[90]   A "landowner generally does not owe a duty to an

invitee if a danger is known or obvious."[91]   "A dangerous condition is 'obvious' when 'both the

condition and the risk are apparent to and would be recognized by a reasonable man, in the position

of the visitor, exercising ordinary perception, intelligence, and judgment.'"[92]   A dangerous

condition is "known" if the plaintiff had knowledge of the existence of a dangerous condition and

appreciated the corresponding danger.[93]

In *Jenkins v. Hestand's Grocery, Inc.*, the Arkansas Supreme Court indicated that a hidden

danger is simply one that is not known or obvious, and vice versa.[94]   In other words, whether a

danger is hidden or obvious ultimately addresses the exact same question—did the defendant owe

---

[87]   *Dollar Gen. Corp. v. Elder*, 2020 Ark. 208, at 7, 600 S.W.3d 597, 603 (citing *Dye v. Wal-Mart Stores, Inc.*, 300 Ark. 197, 198, 777 S.W.2d 861, 862 (1989))

[88]   *Ethyl Corp. v. Johnson*, 345 Ark. 476, 483, 49 S.W.3d 644, 649 (Ark. 2001) (quoting *St. Louis-San Francisco Ry. Co. v. Burns*, 186 Ark. 921, 56 S.W.2d 1027, 1028 (Ark. 1933)).

[89]   *Id.* at 482, 49 S.W.3d at 649.

[90]   *Dollar Gen. Corp.*, 2020 Ark. at 208, at 7, 600 S.W.3d at 603 (citing *Ethyl Corp.*, 345 Ark. at 483, 49 S.W.3d at 649).

[91]   *Id.* (citing *Kuykendall v. Newgent*, 255 Ark. 945, 947, 504 S.W.2d 344, 345 (Ark. 1974)). In *Jenkins v. Hestand's Grocery, Inc.*, the Arkansas Supreme Court indicated that a hidden danger is by definition not open or obvious and an open and obvious danger is by definition not hidden. 320 Ark. 485, 488, 898 S.W.2d 30, 31 (Ark. 1995).

[92]   *Hope Med. Park Hosp. v. Varner*, 2019 Ark. App. 82, at 6, 568 S.W.3d 818, 823 (quoting *Van DeVeer v. RTJ, Inc.*, 81 Ark. App. 379, 386, 101 S.W.3d 881, 885 (Ark. Ct. App. 2003)).

[93]   *Id.* (quoting *Van DeVeer*, 81 Ark. App. at 386, 101 S.W.3d at 884).

[94]   320 Ark. at 488, 898 S.W.2d at 31.

the plaintiff a duty to warn of a dangerous condition.  Because it is the plaintiff's burden to establish that the defendant owed a duty of care, it is the plaintiff's burden to establish that a dangerous condition was hidden.  Ms. Coop therefore shoulders the burden of showing that the depression in the parking lot that caused her to fall was hidden—meaning it was not "open and obvious" or actually known.[95]

In her briefing and at the motion hearing, Plaintiff conceded that the condition of the parking lot where Ms. Coop fell—specifically, the settled slab and resulting small drop-off—was open and obvious as that term is used in the Arkansas case law.[96]  This was a wise concession considering the pictorial exhibits and Ms. Coop's own deposition testimony set out in the facts section above.  Based on the undisputed evidence, no rational juror could conclude otherwise.

An exception to the open and obvious rule does exist.  The Arkansas Supreme Court has recognized "the forced-to-encounter exception to the obvious-danger rule in slip and fall cases where a business invitee was required to traverse an area prone to slippery conditions."[97]  In her briefing, Plaintiff argued that she was forced to encounter the drop-off, and thus that the forced-to-encounter exception to the open and obvious rule applies.[98]  However, at the motion hearing, Plaintiff acknowledged that she could have walked around or otherwise avoided the drop-off.[99]

---

[95] Even if the Court is incorrect, and thus the burden is on Defendant to prove the danger was known or obvious, the Court's ultimate conclusion in this case and on this record would not change.

[96] Pl.'s Resp. to Def.'s Mot. for Summ. J. (Doc. 22) at 2–3; August 20, 2021 Hr'g Tr. at 38.  At the motion hearing, the Court said that it understood Ms. Coop's argument to be (1) that the settled concrete slab was an open and obvious danger and (2) that the exception to the open and obvious doctrine applies.  *Id.*  The Court then asked, "[a]m I understanding you correctly."  Ms. Coop's counsel unequivocally stated, "[a]bsolutely, [y]our Honor.  There's no question it was open and obvious.  There's no question from the pictures that my client provided me . . . ."  *Id.* at 38–39.  The Court circled back to this issue and said to Ms. Coop's counsel, "but you've already agreed this was . . . open and obvious."  *Id.* at 40.  Ms. Coop's counsel said, "[c]orrect."  *Id.*

[97] *Duran v. Sw. Ark. Elec. Coop. Corp.*, 2018 Ark. 33, at 10, 537 S.W.3d 722, 728.

[98] Pl.'s Resp. to Def.'s Mot. for Summ. J. (Doc. 22) at 3.

[99] August 20, 2021 Hr'g Tr. at 41.  At the motion hearing the Court said, "[i]t doesn't sound to me like you're pointing me to any facts that suggest [Ms. Coop] couldn't have walked around this."  *Id.* at 40–41.  Ms. Coop's counsel replied (candidly), "[i]t's because we have no facts that would suggest so."  *Id.* at 41.

This acknowledgement makes sense given that Plaintiff testified that she could have avoided the drop-off that caused her fall.[100]

All parties agree that there are no genuine disputes of material fact on the forced-to-encounter question.  Indeed, all parties agree on the underlying facts.  On this record, considering the pictorial exhibits and Ms. Coop's own deposition testimony set out in the facts section above, no rational juror could conclude that Ms. Coop was forced to encounter the open and obvious hazard to get into the facility.  A safer path might have been more circuitous, but that's not the relevant inquiry.

Because no rational juror could conclude anything other than (1) the condition of the parking lot in the spot Ms. Coop fell (the settled concrete slab and resulting small drop-off) was open and obvious and (2) Ms. Coop was not forced to encounter it, Ms. Coop cannot prevail on her negligence claims.  Accordingly, Defendant is entitled to judgment in its favor.

### Conclusion

Plaintiff's Motion for Leave to File an Amended Complaint is DENIED.  Defendant's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED this 30th day of August 2021.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[100] Ex. A (Coop Depo.) to Statement of Facts (Doc. 16-1) at 40:9–13.